Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5925 | **DATE** | 11/20/2003 |
| **CASE TITLE** | MB Financial Bank vs. MB Real Estate | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] This matter is before the court on plaintiff MB Financial Bank's objections to Magistrate Judge Mason's June 20, 2003, report and recommendation recommending a denial of plaintiff's request for a preliminary injunction and on defendant MB Real Estate's objections to Magistrate Judge Mason's June 20, 2003, report and recommendation. For the reasons stated on the attached Memorandum Opinion, we overrule plaintiff's objections and overrule defendant's objections in accordance with Judge Mason's report and recommendation. The Court hereby denies plaintiff's motion for a preliminary injunction [12-1], for the reasons stated in the attached Memorandum Opinion. Enter Memorandum Opinion.

(11) ■ For further detail Memorandum Opinion attached to the original minute order.

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | *May Mason* | Document Number |
| | Notices mailed by judge's staff. | | number of notices | |
| | Notified counsel by telephone. | | NOV 2 1 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | 97 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to Magistrate Judge Mason. | | NOV 2 1 2003 | |
| | | | date mailed notice | |
| MW | courtroom deputy's initials | | NOV 2 1 2003 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MB FINANCIAL BANK, N.A., | ) |
|           Plaintiff, | ) |
| v. | ) No. 02 C 5925 |
| MB REAL ESTATE SERVICES, L.L.C., | ) |
|           Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff MB Financial Bank, N.A.'s ("Bank") objections to Magistrate Judge Mason's June 20, 2003, report and recommendation recommending a denial of Bank's request for a preliminary injunction and on Defendant MB Real Estate Services, L.L.C.'s ("Real Estate") objections to Magistrate Judge Mason's June 20, 2003, report and recommendation. For the reasons stated below we overrule Bank's objections and overrule Real Estate's objections and, in accordance with Judge Mason's report and recommendation, we deny Bank's request for a preliminary injunction.

DOCKETED
NOV 2 1 2003

## BACKGROUND

Bank is a national banking association that offers a variety of personal and commercial banking services. In regards to real estate, Bank serves as a trustee for personal trusts and estates, and provides services for land trusts. Bank does not make decisions concerning the lease, or sale of the trust properties although it does pursue

foreclosures in connection with real estate financing. Bank, through a subsidiary, provides financing for real estate developments and provides advice concerning zoning issues, but the subsidiary does not act as a real estate broker.

According to Bank, in June 1997 Bank's predecessor, Manufacturers Bank, began using the word mark "MB" and a stylized mark incorporating the "MB." Between 1997 and 2001 Bank was involved in several mergers. Bank asserts that in March of 1999 it began using the word mark "MB FINANCIAL BANK." In the fall of 2001 Bank decided to adopt its present name of "MB Financial Bank, N.A." On July 10, 2001, the U.S. Patent and Trademark Office ("PTO") issued Bank a trademark registration for the "MB FINANCIAL" word mark. In approximately October 2001, Bank began using the "MB Financial Bank" work mark, a new "mb" logo and a "mb financial bank" logo. In conjunction with the 2001 merger Bank engaged in a promotional campaign to promote its new "mb" and "mb financial bank" logos.

Real Estate is engaged in the commercial real estate business which deals with property management, leasing, and corporate services such as tenant representation. Real Estate represents commercial tenants that are interested in renewing their lease or are interested in executing a new lease. Real Estate "cold calls" potential customers in the Chicago area to promote its tenant representation services. Real Estate also provides financial counseling relating to areas such as land acquisition, zoning, financing, construction, marketing, and distribution. Real Estate does not provide banking services. It does not act as a lender, financier, or as an equity source or mortgage broker.

Real Estate began as a real estate advisory service firm called "Miglin-Beitler, Inc." In 2000 the then fifty percent owner of Real Estate, Howard Milstein, decided

to form a national commercial real estate company. In 2001 Real Estate incorporated "MB" into its name which was intended to stand for Milstein Brothers. Bank brings a trademark infringement claim against Real Estate citing ownership of the "MB" logo, the "MB" word mark, the "MB FINANCIAL" word mark, the "mb" logo, the "mb financial bank" logo, and the "MB financial Bank" word mark. Bank requested a preliminary injunction and Judge Mason issued a report and recommendation recommending the denial of the request. Bank and Real Estate are now before this court and both have filed objections to Judge Mason's report and recommendation.

## LEGAL STANDARD

A district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by the judge of the court, of any motion . . . ." 28 U.S.C. § 636(b)(1)(B). If a party objects to a magistrate judge's proposed findings of fact and recommendations, the party must serve written objections and the district court judge who referred the matter to the magistrate shall review the portions objected to under the *de novo* standard. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

A movant seeking a preliminary injunction has the burden of establishing: 1) a likelihood of success on the merits, 2) that the movant has no adequate remedy at law, and 3) that the movant will suffer irreparable harm if the preliminary injunction request is not granted. *AM General Corp. v. Daimler Chrysler Corp*, 311 F.3d 796,

803 (7th Cir. 2002); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). If the movant meets the above burden, then the court must consider the potential irreparable harm to the non-movant if the court were to grant the preliminary injunction and the court must consider whether the preliminary injunction is in the best interest of the pubic. *AM General Corp.*, 311 F.3d at 803-04. If the court in assessing the likelihood of success on the merits factor, determines that the plaintiff has a "greater than negligible change of winning" then the court should turn to a sliding scale analysis and balance the likelihood of success and the potential harms caused by granting or not granting the motion for preliminary injunction. *Id.*

I. Likelihood of Success on the Merits

The Lanham Act prohibits the unauthorized use, or reproduction of a registered trademark. 15 U.S.C. § 1114(1). In order to succeed on a trademark infringement claim a plaintiff must establish: 1) that he owns a mark protected under the Lanham Act, and 2) the use of the mark by the defendant is likely to cause confusion among potential consumers. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001); *Barbeque Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).

A. Protectable Marks

A mark that is registered with the PTO is presumed to be valid *CAE, Inc.*, 267 F.3d at 673, although registration of a mark is not necessary for Lanham Act protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A

mark is protected under the Lanham Act if it is used in commerce. *See Sands, Taylor & Wood Co. v. The Quake Oats Co*, 978 F.2d 947, 953-55 (7th Cir. 1992)(stating that a word or phrase operates as a trademark when it is used to identify itself as the source of the product and "to create in the public an awareness of the uniqueness of the source . . . ."). In this case Bank asserts that it owns six marks.

Judge Mason concluded that the "MB FINANCIAL" word mark, the "mb" logo, the "mb financial bank" logo, and the "MB financial Bank" word mark were protected marks and neither of the parties have objected to that conclusion. Judge Mason also found that Bank had a protected interest in the "MB" word mark based on the fact that Bank began using the mark in commerce beginning in 1997. Real Estate objects to Judge Mason's finding and argues that there is no evidence that Bank began using the Mark until 2001. Real Estate's objection is irrelevant because Real Estate has not shown that it would be the senior user even if we were to find that Bank began using the mark in 2001. We also note that there is evidence of use of the mark by Bank prior to 2001 which again would render Real Estate's objection meaningless.

Judge Mason also found that the "MB" logo was not a protected mark because Bank had abandoned the mark. An owner of a registered mark will lose his exclusive right to use the mark if he fails to use the mark in commerce. 15 U.S.C. § 1127; *Sands, Taylor & Wood Co*, 978 F.2d at 955. A mark is deemed to be abandoned if it is not put to a bona fide use and if it was discontinued, there is no intent to resume the use of the mark. 15 U.S.C. § 1127; *Sands, Taylor & Wood Co.*, 978 F.2d at 954-55. The defendant has the burden of establishing abandonment. *Id.* at 955-56. A party establishes a prima facie case of abandonment by establishing

non-use for three consecutive years. 15 U.S.C. § 1127. The opposing party may rebut the presumption by presenting evidence that explains the non-use or indicates an intent to resume use. *Sands, Taylor & Wood Co*, 978 F.2d at 954-55.

Judge Mason concluded that Bank intended to abandon the "MB" logo at the time of the final merger in the fall of 2001 when Bank began the promotional campaign to promote its new marks. At the time of the merger Bank posted a memo on its internet cite that instructed its employees to remove items that displayed the "MB" logo. Bank also posted another memo entitled "Out With the Old, In With the New" and a memo entitled "A New Era in Banking!" in which Bank introduced its new "mb" logo to its customers. Judge Mason also concluded that Bank had not used the "MB" logo in advertising since November 2001. Since that time all new Bank ATM cards, debit cards, checks, monthly statements, and outdoor signs depicted the new Bank logo. Judge Mason noted, however, that all of the ATM cards, and debit cards issued before the merger would continue to depict the "MB" logo until they were replaced by the customers. Also, after the merger the "MB" logo continued to appear on piece of engraved glass at one of Bank's branches and on a billboard. Bank states that Real Estate 's position is only supported by "unpublished, non-precedential, or wholly distinguishable authority." However, Bank has neglected to cite controlling authority in support of its position as well. Bank introduced a new logo in 2001. It did what it could to remove the old logo from the public eye and it actively promoted the fact that the "MB" logo was no longer its logo. Therefore, we find that there is sufficient evidence that Bank discontinued the use of the "MB" logo at the time of the merger and that the mark was abandoned.

Bank also argues that it did not abandon the "MB" logo because is continued

to use the "key element" of the mark in its new logo. *See Sands, Taylor & Wood Co.*, 978 F.2d at 955 (stating that there is generally not abandonment if the plaintiff makes minor changes to the mark and thus retains the key element of the original mark). We agree with Judge Mason that the changes in the Bank logo were not minor. Bank changed the logo from capital block letters to lower case letters. Bank also changed the color of the letters and the logo backgrounds. Bank makes much of the fact that its mark is distinctive because of the arbitrary combination of the capital letters "MB." We agree that such a combination is distinctive and we also find that to change the color and background of the logo and particularly to change the letters from uppercase to lower case would significantly alter the distinctive "MB" logo. Thus, we agree with Judge Mason that the new logo changed the "basic, overall commercial impression created on buyers." *Id.* Bank also argued that even if Bank discontinued its use of the "MB" logo, it is protected because there was residual goodwill after the mark's abandonment. However, we agree with Judge Mason that if there is any residual goodwill in this case it would be minimal. Therefore, we overrule Bank's objection to Judge Mason's finding that Bank abandoned the "MB" logo and thus owned no protected interest in that logo.

### B. Consumer Confusion

In determining whether the use of the mark is likely to cause confusion among consumers a court should consider the following seven factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists, and (7) whether the defendant intended to 'palm off' his product as that of the

plaintiff." *CAE, Inc.*, 267 F.3d at 677-78. No one factor is dispositive and the court should balance the seven factors. *Id.*; *Packman*, 267 F.3d at 643. However, the similarity of the marks factor, the actual confusion factor, and the intent factor are particularly important. *CAE, Inc.*, 267 F.3d at 678; *Packman*, 267 F.3d at 643.

### 1. Similarity Between Marks

A comparison between marks should consider the marks in all the manners that the marks are presented to the public. *Barbeque Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000)(stating that if a word mark is presented to the public orally and in a visual form, the court must consider both the similarities in the marks' appearance and consider the similarities of the marks in their spoken form). The court should not base its finding solely on a side-by-side comparison, but should also consider "what happens in the marketplace." *Packman*, 267 F.3d at 643. In this case Judge Mason found that Bank's mark and Real Estate's mark are not similar. Judge Mason found that the above mentioned differences in the letter type, color, and background of the parties' logos were significant and that any differences in their spoken form were not sufficient to tilt this factor in Bank's favor.

Bank argues that the court's comparison of the "MB" word mark should not include evaluating the differences in the marks' appearance such as type style, color, and background. We acknowledge that Real Estate's name which has an "M" next to a "B" is similar to the interests in Bank's word marks that contain the letters "MB." However, that similarity is not sufficient to alter our ultimate determination on this factor or to alter our ultimate conclusion regarding the issuance of an injunction.

We agree with Judge Mason that the parties' marks are not visually similar for

the reasons stated above in connection with the abandonment issue. Also, although Bank argues that the marks are presented to the public in an oral fashion, we find that the similarity factor still tilts in favor of Real Estate. The inclusion of the word "Real Estate" orally after "MB" as opposed to the word "Bank" suggests a different entity. If, for example, a consumer receives a cold call from Real Estate, he might think that a real estate company that uses the initial's MB is calling him, but there is no reason why he would be confused and think that a Bank that uses those same initials was calling him or was responsible for the call. Bank argues that a court should not conduct its own side-by-side comparison, but rather must consider the marks as seen and/or heard by consumers that "may have a general, vague, or even hazy, impression or recollection of [plaintiff's] marks." *See James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976)(indicating that court the comparison is not the same comparison done for copyright infringement and that the court should not conduct a side-by-side comparison from its own perspective, but rather should consider "what occurs in the marketplace."). Keeping this proviso in mind, we find that the marks are not sufficiently similar. Therefore, we overrule Banks objections to Judge Mason's findings regarding the similarity of the marks.

### 2. Similarity Between Products or Services

In assessing the similarity between the parties' products or services factor, the court should not focus its attention solely on the similarity of the products and services offered by the parties. *CAE, Inc.*, 267 F.3d at 679. Consumer confusion may exist even if the parties offer "quite different" products or services or are not in direct competition. *Id.* The proper inquiry is "whether the public is likely to attribute the products and services to a single source." *Id.* Judge Mason found that

the parties' services were materially different and found that the factor weighed in Real Estate's favor. We disagree. Although the parties' services are not identical they are closely connected in many areas such as real estate financing and zoning. Although Bank does not sell real estate or advise tenants it does deal with real estate issues in its business. Therefore, we sustain Bank's objection to Judge Mason's finding that the similarity of services factor tilts in favor of Real Estate.

### 3. Area and Manner of Concurrent Use

Judge Mason concluded that there was significant overlap in the parties' customer base and found in favor of Bank on the concurrent use factor. Real Estate has not objected to this finding and we agree with Judge Mason.

### 4. Degree of Care By Consumers

In determining the degree of care likely to be exercised by consumers the court must consider the potential consumers of both parties. *CAE, Inc.*, 267 F.3d at 682. The sophistication of potential consumers may be a relevant consideration when assessing the likely degree of care exercised by consumers. *Id.* at 683. Also, if the product is widely available and is inexpensive, the likelihood is increased that the consumers will not exercise much care in purchasing the product or service. *Id.* Judge Mason concluded that Bank's customers and Real Estate's customers are sophisticated purchasers and that therefore, the consumer care factor tilted in Real Estate's favor. We agree with Judge Mason's reasoning. We also note that the services of banking and real estate dealings are areas that consumers do not enter into lightly. As the evidence indicates in this case, the customers are sophisticated and the services are not inexpensive. Therefore, we overrule Bank's objection to

10

Judge Mason's finding in favor of Real Estate on the consumer care factor.

### 5. Strength of Mark

To assess the strength of a trademark the court should inquire into the trademark's "distinctiveness, meaning its propensity to identify the products sold as emanating from a particular source." *CAE, Inc.*, 267 F.3d at 684; *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000). There are five general categories of trademarks. *CAE, Inc.*, 267 F.3d at 684. Listed in order of distinctiveness from the least distinctive to the most distinctive the categories are as follows: generic, descriptive, suggestive, arbitrary, and fanciful. *Id.* When the plaintiff uses a mark which is an unpronounceable group of letters some factors that the Seventh Circuit considers in determining the strength of the mark include: 1) how long the mark was used, 2) the amount of sales of products or services connected to the mark, 3) the amount of money spent on advertising the mark, 4) the use or non-use of the letter combination by the plaintiff's subsidiaries or divisions, and 5) the registration by the plaintiff of other trademarks that contain the letter grouping. *See id.* at 685(considering factors used by district court). Judge Mason found that the arbitrary arrangement of letters such as "MB" is the strongest of all trademarks and found in Bank's favor on the strength of mark factor. Real Estate objects to Judge Mason's proposed finding. Bank argues that it spent over $7 million on advertising the MB marks, its assets and revenue are considerable, and that Bank has some registered trademarks that contain the MB letter grouping. We find, as did Judge Mason, that the MB mark falls within the arbitrary category of marks and overrule Real Estate's objections to Judge Mason's finding that the "MB" mark is strong.

### 6. Actual Confusion

Evidence of actual confusion is entitled to substantial weight in the likelihood of confusion analysis. *Id.* at 686. One instance of actual confusion has been found by the Seventh Circuit to be adequate to find in favor of the plaintiff on the actual confusion factor. *Id.* However, the Seventh Circuit has also found in some cases that a showing of only a few instances of actual confusion is de minimis and is insufficient to tilt the actual confusion factor in the favor the plaintiff. *Packman*, 267 F.3d at 645. Judge Mason found in favor of Real Estate on the actual confusion factor because Bank failed to provide evidence of actual confusion. In this case Bank introduced statements that it claims shows that consumers thought that Real Estate and Bank were affiliated. The statements relied upon by Bank to show actual confusion were take from persons such as a vice president of a bank, a real estate attorney, an owner of a title company, a Bank employee, and a treasurer for a company. Many of the witnesses are not end-user consumers and the focus of our inquiry must remain on the confusion of the consumers rather than delving into the issue of whether or not the middleman was confused as well. Bank introduced some testimony that Bank customers that had appointments with Bank mistakenly entered an "MB Realty," but we agree with Judge Mason that such evidence is insufficient to show actual confusion of potential consumers. Therefore, we overrule Bank's objections to Judge Mason's finding in favor of Real Estate on the actual confusion factor. We also note that Bank claims that there is additional evidence of actual confusion that was stricken by Judge Mason and we find no error in his granting of Real Estate's motion to strike the additional evidence.

### 7. Intent to Confuse Consumers

12

Whether or not the defendant intended there to be confusion between the defendant's product or service and the plaintiff's product or service is an important factor under the consumer confusion analysis. *Id.* at 644. *See CAE, Inc.*, 267 F.3d at 684 (indicating that a court should consider whether the defendant intended to "palm off" his goods as the plaintiff's goods and stating that intent is irrelevant if there is undisputed evidence that the defendant acted in good faith). Judge Mason found that Bank failed to show an intent by Real Estate to create confusion between its mark and Bank's marks. We agree. Real Estate's historical development which involved the Milstein brothers offers an entirely plausible explanation as to why Real Estate chose to incorporate the letters "MB" into its name. We are not persuaded with Bank's argument that the fact that Real Estate began using the "MB" mark without conducting a trademark search shows an intent by Real Estate to create confusion among consumers. Therefore, we overrule Bank's objection to Judge Mason's ruling in favor of Real Estate on the intent to confuse factor.

### 8. Balancing of Consumer Confusion Factors

After considering the above seven factors we find that the equities favor Real Estate's position that there is not a substantial likelihood that Real Estate's use of its mark will cause confusion among consumers. Therefore, we find that Real Estate has not shown a likelihood that it will succeed on the merits.

### II. Adequate Remedy at Law and Irreparable Harm

In a trademark infringement case there is generally no adequate remedy at law and irreparable harm in the absence of an injunction is generally presumed because of the potential harm to the plaintiff's intangible goodwill. *Ty, Inc. v. The*

13

*Jones Group*, 237 F.3d 891, 902-03 (7th Cir. 2001); *Instrumentalist Co. v. Marine Corps League*, 509 F.Supp. 323, 333 (N.D. Ill. 1981)(stating that there generally is no adequate remedy at law in a trademark case because it is difficult to prove the number of potential customers that did not purchase the goods or services of the plaintiff because of the infringer). Judge Mason found that Bank established that it had no adequate remedy at law, but found that the fact that Bank delayed in bringing the present action after learning of the alleged infringement undercut Bank's claim that it faces irreparable harm. *See Ohio Art Co. v. Lewis Galoob Toys, Inc.*, 799 F.Supp. 870, 887 (N.D. Ill. 1992)(finding that the presumption of irreparable harm is rebutted if plaintiff delays in seeking injunctive relief). Judge Mason thus found that Bank had not established irreparable harm. Judge Mason commented that Bank knew of Real Estate's use of the mark since 2001 and that Bank waited to seek a preliminary injunction after filing this action. Bank argues that it did not seek a preliminary injunction sooner because its was investigating the issue and was engaging in cease and desist settlement negotiations with Real Estate. Bank argues that once it discovered incidents of actual confusion it sought the preliminary injunction. A court can consider the fact there was a delay by the plaintiff in seeking relief when the court addresses the irreparable harm issue. *See Ty, Inc. v. The Jones Group*, 237 F.3d at 902(stating that a "[d]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered.") Also, evidence of whether or not the defendant was lulled into a false sense of security by the delay and relied on the plaintiff's delay is pertinent to the issue of whether a delay indicates a lack of potential irreparable harm. *Id.* at 903.

In this case Bank's predecessor learned that Real Estate was using "MB" in its

name back in 2001 when Real Estate was called MB Beitler. Bank admits that it learned of Real Estate's name change to its current form in January of 2002. However, Bank did not contact Real Estate regarding the "MB" mark until March of 2002. No cease and desist letters had been sent in the interim. Bank did not file the suit until August 20, 2002, and Bank did not file the motion for preliminary injunction until October 8, 2002. These delays are inconsistent with Bank's assertions that it faces irreparable harm. While the delays should not impede Bank's ability to pursue its claim, they do support a finding that Bank is not entitled to the extraordinary relief of a preliminary injunction. *See Barbeque Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000)(stating that a "preliminary injunction is a very serious remedy, 'never to be indulged in except in a case clearly demanding it.'").

### III. Balancing of Interests and Harms

Judge Mason found that Bank faces limited harm if the motion for a preliminary injunction is not granted. He noted that Real Estate is much smaller and lesser known that Bank. He also noted that Real Estate does not engage is much advertising. On the other hand Judge Mason found that Real Estate's goodwill is tied up in its business and that it would face irreparable harm if it was not allowed to use its name. Judge Mason also found that although it is in the public's interest not to be confused, there is not a likelihood of confusion in this instance. We agree with Judge Mason's findings. We also find that it is in the public interest to allow businesses to operate when possible without the intervention of the courts and thus court's should ensure that there is an adequate basis before stepping in and affecting business operations by the use of a preliminary injunction prior to a trial on the

15

merits. The public interests also favors encouraging free enterprise and that interest would not be served if Bank were allowed to impose its control over apparently dissimilar marks in a separate line of business without a trial on the merits of Bank's claim.

## CONCLUSION

Based on the foregoing analysis, we rule in accordance with Judge Mason's report and recommendation and we deny Bank's motion for a preliminary injunction.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: 11-20-03

16